Donald J. DEVINE,[1] Petitioner,

v.

NATIONAL TREASURY EMPLOYEES
UNION, Respondent.

Appeal No. 83–1409.

United States Court of Appeals,
Federal Circuit.

Nov. 13, 1986.

See also, Fed.Cir., 733 F.2d 892.

1. Donald J. Devine has been replaced by Constance Horner as Director of the Office of Personnel Management.

Michael A. Gordon, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for petitioner; with him on the brief were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director. Steven Ash, I.R.S., Washington, D.C., of counsel and Steven Abow, U.S. Office of Personnel Management, Washington, D.C., of counsel.

Mary H. Haller, Asst. Counsel, Nat. Treasury Employees Union, Washington, D.C., argued, for respondent; with her on the brief were Lois G. Williams, Director of Litigation and Kerry L. Adams, Asst. Director of Litigation.

Before RICH, DAVIS, and BALDWIN, Circuit Judges.

## ORDER

RICH, Circuit Judge.

National Treasury Employees Union (NTEU) applies for attorney fees and expenses in connection with representing employee Zazenza Smith in an adverse action proceeding.[2] Smith ultimately prevailed in this court. Specifically, NTEU seeks attorney fees for responding to the Office of Personnel Management's (OPM) petition for reconsideration of the arbitrator's decision in Smith's case in December 1982 and fees and expenses for defending the petition by OPM to this court during the period 1983 to 1984. OPM opposes this application.

### Fees for Defending the Motion for Reconsideration

■ On December 17, 1982, OPM moved for reconsideration of the arbitrator's decision mitigating the agency's penalty of removal to an eleven-month suspension, and the arbitrator denied that motion on January 19, 1983. Any recovery due NTEU for representing Smith before the board, in this case an arbitrator in the board's stead, would lie in the Back Pay Act, 5 U.S.C. § 5596. *Gavette v. Office of Personnel*

*Management,* 785 F.2d 1568, 1573 (Fed.Cir. 1986). In order to recover, NTEU must show that Smith was the "prevailing party" and that an award of attorney fees would be "in the interest of justice." 5 U.S.C. § 5596(b)(1)(A)(ii) (1982); *Gavette,* supra, at 1573. That Smith was the prevailing party is undisputed, but that an award of fees would be in the interest of justice is, and properly so. We hold that it would not be in the interest of justice to compensate NTEU for its time spent defending Smith before the arbitrator for the following reasons: (1) Smith was removed from a position of independent responsibility and trust for falsifying her time sheets and making false statements to her supervisor about the sheets; (2) the arbitrator sustained all of the charges made by the agency; (3) removal for dishonesty has been upheld by this court's predecessor on a number of occasions; and (4) OPM believed that the arbitrator did not consider all of the relevant factors when determining the penalty. *See Wise v. Merit Systems Protection Board,* 780 F.2d 997, 999 (Fed.Cir.1985); *Young v. Merit Systems Protection Board,* 776 F.2d 1027, 1029 (Fed.Cir.1985). Therefore, we award NTEU nothing in connection with defending the government's motion for reconsideration before the arbitrator.

### Fees for Defending the Appeal to This Court

#### 1. *Liability*

■ OPM petitioned this court for review of the arbitrator's decision on February 23, 1983. This court held that the arbitrator, in a well-reasoned opinion, addressed all the relevant issues and considered the applicable *Douglas* factors. Smith being a prevailing party, NTEU shall recover attorney fees and expenses incurred in defending the government's petition for review to this court under the Equal Access to Justice Act (EAJA) "un-

---

2. We presume that NTEU applies for fees on behalf of employee Smith. *Cf. Terrie G. Reid v.*

*Dep't of Commerce,* 793 F.2d 277 (Fed.Cir.1986).

less the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (as amended, Pub.L. No. 99–80, 99 Stat. 183; enacted August 5, 1985, 99th Congress, 1st Session); *Gavette,* supra, at 1578. In other words, OPM must show that it "was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." *Id.* at 1579. We do not find that an award would be unjust or that the position of the United States was clearly reasonable for the following reasons: (1) this court, in *Devine v. Sutermeister,* 724 F.2d 1558 (Fed.Cir.1983), stated that "we question whether the issue of the arbitrator's balancing of the factors concerning mitigation is even an issue properly appealed by OPM under 5 U.S.C. § 7703(d)" and the "issue of mitigation is essentially a matter of judgment closely tied to the facts of this case, precisely the type of issue which OPM should not petition for review." *Id.* at 1566. The merits panel of this case reiterated that position. The position of the United States—that the arbitrator improperly mitigated the penalty—was not substantially justified.

### 2. *Amount of Fees to be Awarded*

 NTEU claims that it is entitled to attorney fees at the "prevailing market rate" as prescribed by § 2412(d)(2)(A) of the EAJA and therefore seeks $13,781.25 for defending the appeal to this court:

$75/hour for 183.75 hours of work (NTEU's figures were four hours too high, apparently due to errors in addition). Absent a showing of special circumstances such as the limited availability of qualified attorneys for the proceeding involved, which is not the case here, "attorney fees shall not be awarded in excess of $75 per hour." § 2412(d)(2)(A)(ii). NTEU seeks the maximum rate, $75/hour, which is permissible absent a showing of special circumstances.[3]

OPM argues that, with respect to attorney fees, NTEU is entitled to recover only its actual costs for attorneys, i.e., the computed hourly wage, based on salary, of the attorneys who worked on the case, multiplied by the number of hours spent on the case. It argues that to award the union the prevailing market rate times the number of hours worked would give the union a windfall because the union did not expend nearly that amount to defend Smith and would be in violation of the rules of ethics; the award would go into NTEU's general coffers and be used for nonlegal purposes. OPM relies on *Goodrich v. Department of the Navy,* 733 F.2d 1578 (Fed.Cir.1984), and *National Treasury Employees Union v. Department of the Treasury,* 656 F.2d 848 (D.C.Cir.1981), for this latter proposition.

The *Goodrich* case involved an award of attorney fees under 5 U.S.C. § 7701(g)(1) of the Civil Service Reform Act (CSRA) to an attorney who was employed by the Ameri-

---

**3.** The pertinent text of § 2412 is:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

\* \* \* \* \* \*

(2) For the purposes of this subsection—
(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the

reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.); \* \* \*.

can Federation of Government Employees (AFGE) and who represented a federal employee who was removed from his job, this court holding that the board did not commit legal error in limiting the attorney fees award for services rendered in connection with proceedings before the board to "the expenses the union incurred in providing services." *Goodrich,* supra, at 1581. The statute, 5 U.S.C. § 7701(g)(1) authorizes the board to "require payment by the agency involved of reasonable attorney fees incurred by an employee" who successfully overturns an agency personnel action if the award would be "in the interest of justice," [4] the same standard as that used in the Back Pay Act. *See* 5 U.S.C. § 5596(b)(1)(A)(ii); [5] *Sims v. Department of the Navy,* 711 F.2d 1578, 1579–81 (Fed. Cir.1983).

The board ordinarily calculates the fee in 7701(g) and Back Pay Act cases by multiplying the lawyer's customary hourly rate by the number of hours expended. Where the lawyer is employed by a union, however, the board limits the fee to the amount the union has expended in providing the services, i.e., the lawyer's salary plus overhead expenses. *O'Donnell v. Department of the Interior,* 2 MSPB 604, 611 n. 10, 2 MSPR 445. 454 n. 10 (1980); *Wells v. Schweiker,* 12 MSPB 329, 331–32, 14 MSPR 175, 179 (1982); *Powell v. Department of the Treasury,* 8 MSPB 21, 19 MSPR 174 (1984); *Allen v. Department of the Treasury,* 20 MSPR 518 (1984).

The latter three board cases, as well as *Goodrich,* rely upon the thoughtful reasoning in *National Treasury Employees,* supra. That case involved the NTEU's quest to recover attorney fees under the Privacy Act, 5 U.S.C. § 552a (1976) [6] for supplying legal services to a successful plaintiff who belonged to the union's prepaid legal plan. The attorneys were salaried employees of the union, and admitted that the fee, if awarded, would go to the union, not to them. The court stated that unless the fees were awarded to the lawyers, and not to the union that paid their salary, fees equal only to the union's costs in representing the plaintiff could be awarded. The court cited ABA Code of Professional Responsibility, Disciplinary Rule (DR) 2–103(D)(4)(a) for the maxim that prepaid legal services plans must be so "organized and operated that no profit is derived by it from the rendition of legal services by lawyers," and DR's 3–102 and 3–101(A) that attorneys may not split fees with laymen or lay organizations, or enable them to engage in the unauthorized practice of law. *National Treasury Employees,* 656 F.2d at 851–52. Accord *Munsey v. Federal Mine Safety & Health Com'n,* 701 F.2d 976 (D.C.Cir.1983); *Jordan v. United States Dept. of Justice,* 691 F.2d 514 (D.C. Cir.1982).[7]

Nothing in the EAJA or its legislative history indicates that courts should ignore these safeguards, addressed in similar cases above, established by the legal pro-

4. The text of § 7701(g)(1) is:

(g)(1) Except as provided in paragraph (2) of this subsection, the Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

5. The text of 5 U.S.C. § 5596(b)(1)(A)(ii) is:

(ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, or under chapter 11 of title I of the Foreign Service Act of 1980, shall be awarded in accordance with standards established under section 7701(g) of this title; and * * *.

6. Under the Privacy Act, "[t]he court may assess reasonable fees in favor of a complainant who has substantially prevailed." 5 U.S.C. § 552a(g)(3)(B).

7. *But see Devine v. Sutermeister,* 724 F.2d 1558 (Fed.Cir.1983) (court awarded prevailing market rate attorney fees to NTEU apparently without addressing the issues raised in this case).

fession to protect the public from irresponsible and incompetent law practice when awarding attorney fees under the EAJA. Although the Act specifically contemplates that associations, corporations, and similarly large entities can be prevailing parties, and therefore, *a fortiori,* are eligible to receive fee awards, the Act provides no guidance on the question whether a union, not a prevailing party itself, is eligible to receive prevailing market rate fees for services performed as a legal aid organization. These ethical safeguards provide just as compelling a reason to not award prevailing market rates under the EAJA, where fees "shall" be awarded, as they do under other fee provisions such as the Privacy Act, the Back Pay Act, and the Civil Service Reform Act, where reasonable fees "may" be awarded; the fact that fee awards are mandatory in the first and discretionary in the latter is not evidence of a legislative intent preclusive of our interpretation here.

Nor does the fact that the EAJA expressly provides that fee awards shall be based on prevailing market rates, *see* supra, note 1, persuade us that fee awards to unions should not be limited to costs incurred because of the considerations outlined herein. Congress was undoubtedly aware that courts have consistently interpreted "reasonable" fees as the prevailing market rate multiplied by the number of hours expended, *see, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), effectively the same standard set out in the EAJA, and have long felt unconstrained to raise or lower that amount depending upon the facts of each case. Furthermore, we do not find compelling Congress' intent that regardless of whether the attorney on the case charges less than the prevailing market rate that that attorney should nonetheless receive the prevailing rate. *See* S.Rep. No. 253, 96th Cong., 1st Sess. 17 (1979). Congress was also concerned, of course, about not overburdening the public fisc, and limited the hourly rate to a maximum of $75 per hour, obviously below the rate charged by a number of law firms.

Different concerns exist when awarding attorney fees in civil rights cases where encouraging private attorneys general to come forth and challenge governmental abuses is undeniably an important concern, *see Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (Court held that under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (Supp. V 1981), non-profit legal service organizations are entitled to a fee based on prevailing market rates rather than their costs); *see also Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400 (1968), and more compelling than in adverse action cases such as the one at bar. *Goodrich,* supra, at 1581–82. Furthermore, this case is unlike those involving fee awards to legal aid organizations, like that in *Blum,* where the organization exists solely to provide legal help. Here, to the contrary, legal aid is just a small part of what the NTEU provides.

In *Goodrich,* we left for a later day the question whether awarding market rate fees to the union would be appropriate where its legal representation fund *fully* supported the union's legal services program. *See Goodrich,* supra, at 1581. In that regard, we note that such an option was addressed by the board in *Wells v. Schweiker,* supra. The board in *Wells* stated that even if a separate legal fund were established and that all litigation funds came from that fund, that ethical problems would nonetheless exist because such a plan "would relieve the union *pro tanto* from the burden of financing its litigation activities by allocating funds from general revenues [and would allow] it to profit indirectly from that which it could not do directly." *Wells v. Schweiker,* supra, at 332; *see also Goodrich,* supra, at 1581.

If a union chose not to establish a fund fully supportive of the union's litigation activities, the court could award the prevailing market rate fees directly to the attorneys, and they could, in turn, reimburse the union for its actual expenses or, as they are allowed to do in any case, make a charitable contribution to any organization they see fit. *National Treasury Em-*

*ployees,* supra; *Wilderness Society v. Morton,* 495 F.2d 1026 (*en banc* 1974), *rev'd on other grounds sub nom. Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

In this case, because there is no indication that the fees awarded will not go to the union or that the union has established a fund fully supportive of the union's litigation activities and because we see no reason to ignore the rules of ethics that the legal profession maintains to ensure its integrity, we hold that NTEU, a nonprofit union whose charter goes beyond providing legal services and thus whose fees would inure to the benefit of a nonlegal organization, is entitled to recover only its costs of litigation—overhead expenses and the cost of its attorneys—before this court. The cost of attorneys to NTEU is to be calculated for each attorney separately by multiplying the hourly rate of the attorney, based upon the attorney's salary, by the number of hours reasonably expended on this case by the attorney. The total time expended by the union defending the appeal to this court is, as NTEU's papers reasonably show, 183.75 hours.

Accordingly,

IT IS ORDERED THAT:

NTEU submit to this court the cost, based on salary, of each attorney listed in Respondent's Motion for Award of Attorney's Fees, and its overhead incurred in connection with this case.