Roy A. JOHNSON and John J. Sheller

v.

The UNITED STATES.

No. 166–83C.

United States Claims Court.

Feb. 16, 1989.

Martin R. Cohen, Philadelphia, Pa., for plaintiffs. Mark D. Roth, of counsel.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Maj. Bruce Brown, Office of the Judge Advocate General, Dept. of the Air Force, of counsel.

ORDER

YOCK, Judge.

This matter is before the Court on plaintiffs' motion for attorney fees and expenses pursuant to the authority contained in the Back Pay Act, 5 U.S.C. § 5596 (1982), and the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982, Supp. III 1985).

For the reasons stated herein, the Court finds that plaintiffs are entitled to recover

reasonable attorney fees but only to the extent that such fees do not exceed the cost to plaintiffs' union for providing staff counsel to represent plaintiffs. Plaintiffs may also recover attorney expenses that would ordinarily and customarily be billed to the client. The Court finds further that the parties have made a settlement allocating taxable costs, as contrasted with attorney fees and expenses; thus, the Court makes no additional award for taxable costs.

## Factual Background

Plaintiffs, Roy A. Johnson and John J. Sheller, formerly employed by the New Jersey Air National Guard (ANG) as civilian technicians, were dismissed from their posts for activities allegedly in violation of federal law. Plaintiffs appealed their dismissals under provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 (1982), to the United States District Court for the District of New Jersey. They also claimed that their dismissals were improper under 42 U.S.C. § 1983 (1982) because of alleged due process violations and First and Fifth Amendment infractions. Plaintiffs sought both legal and equitable relief in the District Court.

In a ruling dated March 8, 1983, the District Court transferred plaintiffs' claims for monetary relief to this Court pursuant to 28 U.S.C. § 1631 (1982). The District Court reasoned that jurisdiction was proper in the Claims Court because plaintiffs sought back pay and other damages totalling in excess of $10,000. *See* 28 U.S.C. § 1491 (1982). The District Court retained jurisdiction over the nonmonetary aspects of the case.

Defendant thereupon moved in this Court for an order directing plaintiffs to seek to have the District Court vacate its transfer order or, in the alternative, for an order suspending proceedings in this Court. In an order dated August 30, 1983, this Court suspended proceedings for six months pending resolution of the nonmonetary issues in the District Court.

In October 1983, the defendant filed a second Motion to Dismiss in the District Court arguing this time that relevant Supreme Court decisions precluded plaintiffs' suit against their individual supervisors. The District Court, in an opinion dated December 22, 1983, dismissed plaintiffs' claims against their supervisors but retained jurisdiction of all remaining claims. Thereafter, the plaintiffs amended their complaint, and defendant filed an answer on February 24, 1984 that denied all material allegations. Subsequently, both parties moved for summary judgment.

Shortly thereafter, the District Court granted plaintiffs' motion for summary judgment on their APA claim and entered judgment against the defendant. In addition, the Court dismissed plaintiffs' constitutional claims but certified to the United States Court of Appeals for the Third Circuit the question of whether the Government acted "under color of state law" for purposes of 42 U.S.C. § 1983.

On October 31, 1985, the Third Circuit affirmed the District Court's finding of liability against the Government under the APA. *Johnson v. Orr*, 776 F.2d 75 (1985).[1] The parties thereafter settled the substantive monetary issues pending in the United States Claims Court by filing a Stipulation for Entry of Judgment on November 14, 1986. Based on this stipulation, this Court entered judgment for plaintiffs on November 20, 1986. Although the parties settled the plaintiffs' claims for back pay and taxable costs, they reserved the issue of attorney fees and expenses for the Court to decide. The Stipulation read in pertinent part:

4. Plaintiffs have offered to settle this case, and the offer was accepted on behalf of the Attorney General.

5. Accordingly, plaintiffs and defendant stipulate and agree that this Court may enter judgment in favor of Roy A. Johnson in the amount of $24,515.82, in

---

1. On January 13, 1986, the Third Circuit also held that ANG supervisory personnel and the New Jersey Adjutant General had acted under color of state law when they participated in personnel decisions resulting in plaintiffs' dismissal. *Johnson v. Orr*, 780 F.2d 386 (1986).

favor of John J. Sheller in the amount of $29,713.52, and *may award costs to plaintiffs in the amount of $60.00.* The judgment will provide that the check for the costs will be made payable to the American Federation of Government Employees.

\* \* \* \* \* \*

12. Plaintiffs and defendant stipulate and agree that payment of the judgment entered pursuant to this settlement and modification of plaintiffs' records as stated in paragraphs 10 and 11 above will be a full discharge to the Federal Government of all claims and demands arising out of the facts and circumstances set forth in the complaint in this case (including any claims for lump sum annual leave payments), *except any claims plaintiffs might have for attorney fees and expenses.* [Emphasis supplied.]

The plaintiffs have now timely filed the current application/motion for attorney fees and expenses. Having prevailed in their District Court action and by stipulated settlement in their Claims Court action, the plaintiffs are here alleging that the defendant's position in this litigation was not substantially justified and/or in any event that they are entitled to attorney fees and expenses in the interest of justice.[2] The defendant does not contest its liability for attorney fees and expenses in this case, but it does contest the amount of the fees and expenses that the plaintiffs are claiming.

Throughout the course of this Claims Court litigation, the plaintiffs have been represented by two attorneys. These two attorneys are Mr. Martin R. Cohen and Ms. Gay Snyder and both are employees of a union, the American Federation of Government Employees (AFGE), of which the plaintiffs are members. The plaintiffs in their application/motion are herein requesting that the union be reimbursed for the attorneys' services at the prevailing market rate of $100 per hour for Mr. Cohen's time and $75 per hour for Ms. Snyder's time.

Some 50 hours of attorney time is involved, for a total amount requested of some $4100. The plaintiffs are also requesting a total of $160 in attorney out-of-pocket expenses.

As indicated, the defendant has raised several objections to the plaintiffs' application/motion as to the amounts requested and the plaintiffs' methodology used to arrive at those amounts. The defendant's first and primary objection is to the plaintiffs' request for a market rate recovery as to the attorney fees. The Government believes that the plaintiffs should be limited to a recovery of the costs incurred by the union in employing the attorneys as counsel for the plaintiffs. Thus, it urges the Court to use an attorneys' cost plus overhead rule instead of the attorney market rate recovery rule. In this connection, the defendant has suggested the appropriate hourly rate to be applied can be ascertained from the hourly compensation affidavits filed by the plaintiffs. The defendant's second objection relates to certain hours of attorney time that were incurred by the plaintiffs' counsel to contest the Government's motion to suspend the Claims Court case until the District Court case could be completed. Some 1.5 hours of attorney time was involved in this effort. The defendant's third objection relates to the attorney time utilized to prepare and file the instant application/motion, *i.e.* the fee for fees issue. Some five hours of attorney time was involved in this effort. The fourth and final objection raised by the defendant relates to the recovery of $30 of attorney expenses for photocopying. The Government contends that such expense was really in the nature of taxable costs which had already been stipulated and agreed to.

*Discussion*

Plaintiffs herein base their entitlement to attorney fees and expenses on the Back Pay Act, 5 U.S.C. § 5596 (1982) (BPA) and the Equal Access to Justice Act, 28 U.S.C.

---

**2.** The plaintiffs' current application/motion for attorney fees and expenses in this case relates only to those fees and expenses that have been incurred in prosecuting their claims before the United States Claims Court.

§ 2412 (1982, Supp. III 1985) (EAJA). The BPA provides that an employee of an agency, found by appropriate authority to have been affected by an unjustified personnel action, "is entitled to receive * * * reasonable attorney fees related to the personnel action," 5 U.S.C. § 5596(b)(1)(A) (1982), where such award is "in the interest of justice." *Id.* at § 7701(g)(1). Similarly, the EAJA authorizes an award of attorney fees and expenses to the prevailing nongovernmental party in a civil action against the Government "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1982, Supp. III 1985).

## I. Attorney Fees

In relying on the Back Pay Act and the Equal Access to Justice Act in support of their application/motion for attorney fees, the plaintiffs argue that attorney fees in the present case should be calculated according to the prevailing market rate paid in the surrounding geographical area for legal services comparable in scope and quality to that provided by the AFGE counsel. The plaintiffs note that the EAJA provides on its face for a market rate of recovery, without regard to the particular fee arrangement made between client and counsel. In addition, the plaintiffs urge that the reasonable fee in the interest of justice standard utilized in the BPA is similar in effect because courts have consistently interpreted reasonable fee to mean the prevailing market rate. Since the EAJA allows for a maximum recovery of $75 per hour, absent special circumstances, the plaintiffs argue that such amount should be utilized to determine the attorney fees recoverable under the present circumstances.[3]

In the alternative, plaintiffs contend that if this Court feels constrained by established Federal Circuit precedent[4] to award attorney fees based on the hourly costs to the union, then such hourly costs must include gross salary plus specific employee benefits. In this regard, plaintiffs insist that total compensation, *i.e.,* gross salary plus specific employee benefits such as insurance coverage, pension plans, and tax liabilities, should be divided by the actual hours worked in any given year, *i.e.,* yearly working hours less annual leave, sick leave, and holidays, in order to determine the attorney hourly rate. The calculated rate would in turn be applied to the total number of hours expended in the contested litigation to establish the amount of recoverable attorney fees.

In opposition to the plaintiffs' application for costs and attorney fees, the defendant concedes its liability for most of the plaintiffs' attorney fees under the BPA or the EAJA[5] but challenges plaintiffs' computation of the amount owing. In so doing, the defendant relies upon established Federal Circuit precedent to contend that the prevailing market rate is an inappropriate measure of recovery when union-employed counsel is involved and the union fund, which will receive the fees, is not fully supportive of the union's litigation efforts. In essence, the defendant asserts that a claimant with union-employed counsel can recover only the expense to the union in supplying the legal services rendered. Contrary to the plaintiffs' assertions, the defendant argues that such expense is calculated simply by dividing the gross salary of a given attorney, exclusive of any benefits, by the total working hours in a given year, not just the hours actually worked. In addition, the defendant concedes that the hourly rate should be multiplied by 100 percent in order to account for the union's office overhead.

---

**3.** The plaintiffs also posit that special circumstances are present that would justify the Court's awarding of $100 per hour of Mr. Cohen's time, rather than the $75 per hour maximum figure mentioned in the EAJA.

**4.** *See Devine v. National Treasury Employees Union,* 805 F.2d 384 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

**5.** *See Gavette v. OPM,* 785 F.2d 1568 (Fed.Cir. 1986); *Martin v. United States,* 12 Cl.Ct. 223 (1987), *aff'd in part, vacated and remanded on other grounds,* 852 F.2d 1292 (Fed.Cir.1988).

As the defendant does not contest its liability for attorney fees and expenses in this case, this Court must only be concerned with the proper measure of recovery for such attorney fees and expenses. It should be noted that this Court is bound by the dictates of the Federal Circuit, and accordingly the Court concludes that the plaintiffs herein are not entitled to recover attorney fees based upon the prevailing market rate.

At first glance, the plaintiffs' claim for attorney fees calculated at the prevailing market rate seems to be supported by the EAJA. This is so because the EAJA expressly provides that fee awards *"shall be based upon prevailing market rates."* 28 U.S.C. § 2412(d)(2)(A) (1982, Supp. III 1985) (emphasis supplied). In contrast, the BPA provides, rather ambiguously, for recovery of "reasonable attorney fees." 5 U.S.C. § 5596(b)(1)(A)(ii). Thus, an argument can be made that the market rate standard defined by the EAJA is mandatory and factors such as reasonableness and surrounding circumstances should not be used to alter the rate of recovery. However, the Federal Circuit, in *Devine v. National Treasury Employees Union*, 805 F.2d 384 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), rejected this very argument. In this regard, the Court noted the following:

> Nothing in the EAJA or its legislative history indicates that courts should ignore [ethical] safeguards, established by the legal profession to protect the public from irresponsible and incompetent law practice when awarding attorney fees under the EAJA. * * * These ethical safeguards provide just as compelling a reason to not award prevailing market rates under the EAJA, where fees "shall" be awarded, as they do under other fee provisions such as the Privacy Act, the Back Pay Act, and the Civil Service Reform Act, where reasonable fees "may" be awarded; the fact that fee awards are mandatory in the first and discretionary in the latter is not evidence of a legislative intent preclusive of our interpretation here.

> Nor does the fact that the EAJA expressly provides that fee awards shall be based on prevailing market rates * * * persuade us that fee awards to unions should not be limited to costs incurred because of the considerations outlined herein.

*Devine,* 805 F.2d at 387–88. As will be noted *infra,* the ethical considerations mentioned in *Devine* apply equally to the present case, and thus this Court is free, indeed required under *Devine,* to alter the standard prevailing market rate of recovery in establishing a fee award.

Since the EAJA prevailing market rate standard is not mandatory, the question becomes what measure of recovery should the Court apply when union-supplied counsel is involved. Two decisions of the United States Court of Appeals for the Federal Circuit make clear that where the fee award goes neither directly to counsel nor to a fund adequate in itself to support the union's litigation activities, a claimant with union-supplied counsel can recover only the cost to the union in supplying the legal services rendered. *Devine,* 805 F.2d at 388–89; *see also Goodrich v. Department of the Navy,* 733 F.2d 1578, 1579–80 (Fed. Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985).

In both *Goodrich* and *Devine,* the Federal Circuit found persuasive the reasoning of *National Treasury Employees Union v. Department of the Treasury,* 656 F.2d 848 (D.C.Cir.1981) (hereinafter *NTEU*). There, the D.C. Circuit expressed concern that an above-cost recovery inuring to a union's benefit violated disciplinary rules of the American Bar Association's Code of Professional Responsibility (hereinafter ABA Code). *NTEU, supra,* 656 F.2d at 851. The Court reasoned that a market value recovery for the union would be a windfall that would compromise ABA Code directives prohibiting fee splitting with nonlawyers (DR 3–102) or aiding lay organizations to engage in the unauthorized practice of law (DR 3–101(A)). *NTEU, supra,* 656 F.2d at 851–52; *see also* ABA Code, DR 2–103(D)(4)(a) (prepaid legal plans). Together, these ethical concerns prohibited a prevailing market rate fee

award which would in effect subsidize the union's general litigation efforts.

The plaintiffs herein strongly resist such a result by citing noncontrolling precedents and distinguishable analogies. Initially, the claimants advance the case of *Curran v. Department of the Treasury*, 805 F.2d 1406, 1409 (9th Cir.1986), which concluded that "[w]hen fees are paid into a separate account used solely by lawyers for litigation purposes, there is simply no fee splitting with a lay entity and no encouragement of the unauthorized practice of law." However, *Curran* is not controlling because it directly contradicts the reasoning in *Devine* and *Goodrich* and this Court is bound by Federal Circuit precedent.

In addition, the plaintiffs, citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), attempt to invoke public policy to justify a different result. In *Blum*, the Supreme Court allowed a non-profit legal service organization to recover fees on the basis of the prevailing market rate in order to advance the protection of civil rights by facilitating private suits. This reasoning was found inapposite, however, by the Federal Circuit as "[t]here [was] no comparable public policy to encourage the bringing of suit by federal employees challenging adverse personnel actions against them." *Goodrich*, 733 F.2d at 1581.

In sum, although in the present case the union's litigation fund is kept separate from other union monies, there is no indication that it is sufficient in itself to pay for all union legal activities. Indeed, plaintiffs state that the fund "is used *only to help pay for* administrative and court litigation on behalf of employees represented by AFGE * * *." Supplement to Plaintiffs' Application for Costs and Attorney Fees at 1 (March 19, 1987) (emphasis supplied). Accordingly, *Goodrich* and *Devine*, require that the Court limit the plaintiffs' recovery to the amount expended by the union for its costs in supplying legal services to the plaintiffs.

In attempting to determine the appropriate costs to the union in supplying the attorney services to the plaintiffs, this Court finds guidance in the case of *Powell v. Department of the Treasury*, 8 MSPB 21, 8 M.S.P.R. 322 (1984),[6] which the Court of Appeals for the Federal Circuit has also implicitly adopted.[7] In *Powell*, the Merit Systems Protection Board (MSPB or Board) noted three elements of actual costs which were to be considered in establishing a fee and expenses award. Those three elements are: (1) compensation for the attorney's time expended in the litigation; (2) overhead expenses; and (3) out-of-pocket expenses. *See Powell*, 8 M.S.P.R. at 331. Each element must be addressed on an individual basis.

As to the first element, compensation, the Board offered the following definition: "[Compensation] will normally consist of the attorney's gross salary paid by the union, reduced to an hourly basis and reimbursed for the number of professional hours reasonably devoted to the case as shown by the same type of time records expected of private attorneys." *Id.*

Plaintiffs here contend that total compensation includes certain benefits in addition to gross salary. Listed are such benefits as health, optical, and life insurance; contributions to an employees' pension plan; workers' compensation insurance; FICA; and state and federal unemployment taxes. Moreover, plaintiffs assert that for purposes of calculating counsel's hourly wage rate, only the hours actually worked during a given year (excluding vacation and holidays) should be considered as opposed to the total hours for which pay was awarded. In sum, it is the plaintiffs' argument that total compensation, which includes certain benefits, should be divided by the actual hours worked during a given year to arrive at the compensable hourly rate.

In opposition, the defendant insists that a proper computation of compensation should not include the employee benefits added to the gross salary as suggested by the plain-

---

**6.** *See also Snyder v. Department of Justice*, 26 M.S.P.R. 324 (1985).

**7.** *Devine, supra,* 805 F.2d at 387–88.

tiffs. Instead, such expenses, argues the defendant, should be considered and classified as overhead, which is an additional element of recovery. Thus, notes the defendant, to allow recovery of these expenses under both categories would endorse a double recovery favoring the union. Additionally, the defendant contends that total working hours in a given year, not just the hours actually worked, should be used in calculating the proper hourly wage upon which recovery will be based.

In order to understand the arguments made by the parties, it is necessary to first define overhead as interpreted by the Board in *Powell*. In this regard, the Board stated the following:

> It would be unreasonable not to recognize and allow for the overhead expenses which are necessarily incident to provision of legal representation. No lawyer, whether in private practice or on the staff of a union or other such organization, can reasonably be expected to perform *professional services without an office, law books, secretarial support, office supplies and equipment, telephone, etc. The cost of such overhead is as much a part of the cost of providing the legal services as the compensation paid to the attorney. * * *

> To require in each case that overhead costs be proven would risk a burden to the parties and to the Board's record, and lengthy disputations about the proper cost items and allocable shares of those items, that will be immediately familiar to any lawyer who has ever survived a rate case. The burdens of such an exercise in union accounting, with the inevitably accompanying collateral disputes, would generally be disproportionate to the amounts involved, inflate fee awards by the lawyer's time required to litigate the awards, and would be an unreasonable expenditure of the Board's slim resources and an imposition upon the parties. * * * [W]e [do not] believe * * * that fee award proceedings should be protracted by collateral questions of union accounting. Common sense suggests that a simpler method be available. *Powell*, 8 M.S.P.R. at 331–32.

To be consistent with *Powell*, it is imperative for this Court to understand the meaning of the Board's intent in defining compensation as that which *"normally consist of the attorney's gross salary paid by the union." Id.* at 331 (emphasis supplied). Only then may the proper method for computing compensation be determined. Obviously, the presence of the word "normally" interjects a certain degree of ambiguity into the definition. Clearly, had the Board chosen not to use "normally" in its definition, there would be no doubt that gross salary alone would be the proper measure of compensation to be considered in calculating a fee award.

Nevertheless, it is clear from reading the decision that the Board used the word "normally" to contrast the normal situation of a union-employed counsel earning an annual salary from those special circumstances in which the gross salary approach simply would not be appropriate. For instance, in a highly unusual or complex situation, the union may have employed outside counsel to represent its members and paid the market rate for such representation. Whatever the special circumstances may be, it is reasonable to believe that the Board envisioned the routine or normal situation to be that of an employer/employee relationship whereby the attorney was compensated by way of an annual gross salary and this Court so concludes. Therefore, absent any overriding considerations or special circumstances, gross salary was to be used as the cornerstone in the calculation of union-employed counsel's hourly rate.

The plaintiffs' attempt to give the word "normally" a different meaning. In essence, they insist that the Board's use of "normally" has substantive connotations. Instead of an attorney being given a simple gross salary, the plaintiffs contend that the use of "normally" was injected to protect those situations in which there were additional elements of compensation such as insurance benefits and pension plans. The problem with this interpretation is that it

would necessarily take the Board's definition outside the norm. The simplistic meaning of a normal standard is that activity, conduct or circumstance which is present or appropriate more often than not. In today's world of complex business relationships, it would be entirely unreasonable for this Court to ignore the reality that benefits such as those mentioned above are a common factor in an employee's salary scheme. Thus, to hold that the Board did not consider benefit programs when it established gross salary as the standard computational tool in awarding fees, would be to ignore altogether the common meaning of the word "normally."

In accord with the above, it is this Court's opinion that the Board in *Powell* intended to utilize gross salary as a simple standard in establishing an hourly wage to be used in calculating an appropriate fee award. Such conclusion is entirely consistent with the Board's intent to formulate a very basic, simple procedure to be used in fee award controversies. As stated earlier, this intent was clearly expressed in the Board's discussion concerning overhead expenses. The Board was obviously mindful of the numerous burdens which would be forced upon the parties as well as the Court if it became necessary to delve into the intricacies of union accounting. If benefits were to be considered in arriving at an hourly rate for union counsel, it would be necessary to engage in a review of the union's accounting records. It is this very activity that the Board meant to avoid when it stated that "[c]ommon sense suggests that a simpler method must be available." *Powell,* 8 M.S.P.R. at 332.

Having established annual gross salary as a proper starting point for the fee award computation, the next step is to determine how many working hours must be considered in determining the hourly rate.

The two alternatives advanced by the parties are total working hours in a year or the number of hours actually worked by a given individual. Simplicity favors the adoption of the total available working hours. Such an approach would prevent any dispute which may arise in the calculation of hours actually worked. The MSPB has adopted total available hours as the appropriate figure on the basis of a continuity theory. According to the Board, it only makes sense to use total available working hours in calculating an hourly rate since the annual salary is based on such figure. *See, e.g., Powell v. Department of the Treasury,* 26 M.S.P.R. 343, 346 (1985) (actual hours of service should not be considered); *Allen v. Department of the Treasury,* 20 M.S.P.R. 518, 521 n. 4 (1984) (same). On the basis of this reasoning, this Court adopts the total available working hours as the appropriate figure to be used in calculating an hourly wage rate for union counsel. Therefore, in sum, the hourly wage rate for union-supplied counsel will be calculated by dividing the attorney's gross salary by the total available working hours in a given year.

To facilitate the computation of a fee award, the plaintiffs' counsels have offered evidence of compensation in their own uncontroverted affidavits and in the uncontroverted affidavit of Mr. Thomas Metzinger, Director of Finance at AFGE. As stated in Mr. Metzinger's affidavit, Ms. Snyder's gross annual salary was $28,852 in 1983, $31,506 in 1984, and $32,451 in 1985. Mr. Cohen's salary was $34,545 in 1985, $36,660 in 1986, and $37,760 in 1987. Furthermore, the attorneys have stated that they work a 35–hour week. On a 52–week basis, that figure yields 1,820 hours per year. On the basis of this information, the following hourly rates are applicable for the given year:

|  | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|
| Ms. Snyder | $15.85 | $17.31 | $17.83 | N/A | N/A |
| Mr. Cohen | N/A | N/A | $18.98 | $20.14 | $20.75 |

As noted in *Devine,* the above figures will be used to calculate "[t]he cost of attorneys * * * by multiplying the hourly rate of the attorney * * * by the number of hours expended on [the case] * * *." *Devine,*

*supra,* 805 F.2d at 389. However, before making this calculation, the Court must examine the reasonableness of the hours charged by union counsel as having been expended on the present case.

According to plaintiffs' uncontroverted affidavits, Ms. Snyder expended 32.8 hours in representing plaintiffs in 1983, 2.3 hours in 1984, and 0.4 hours in 1985 for a total hours expended of 35.5 hours. Mr. Cohen expended 2 hours in 1985, 10 hours in 1986 and 2.5 hours in 1987 for a total hours expended of 14.5 hours.[8]

Although the defendant does not dispute the number of hours expended on this case by plaintiffs' union counsel, defendant does challenge their entitlement to be paid for certain hours in two regards. First, the defendant believes that plaintiffs should not be allowed the time it took to research and write the response in opposition to the defendant's motion(s) to suspend the money claim in this Court pending disposition of the nonmonetary claim moving forward in the District Court. The defendant argues that it was unreasonable and not in the interest of justice for the plaintiffs to oppose the motion to suspend and thus would have this Court deny the 1.5 hours of time requested by the plaintiffs for work on this effort. Without belaboring this point, the Court simply does not agree with the defendant's contention. The defendant had filed its motion(s) and a response (either pro or con) was due. Had the plaintiffs not responded, it is very possible that the Court would have ordered a response to the motion. In any event, the point here in issue is *de minimis.* The plaintiffs were the prevailing party and it would not be in the interest of justice to deny the 1.5 hours of attorney fees here expended, having to do with the suspension motion(s).

█ The defendant's second challenge to the plaintiffs' entitlement to certain fees is, however, far more significant. The defendant challenges the plaintiffs' right to recover for the hours expended in research-ing and filing the motion/application for the attorney fees and expenses at issue here. Mr. Cohen spent 5 hours on this effort, 2.5 hours in 1986 and 2.5 hours in 1987. The defendant's position is that the plaintiffs should not recover attorney fees associated with this fee application because the defendant's position was and is substantially justified and it would not be in the interest of justice to award the fees to the plaintiffs under the factual circumstances here present. The defendant points out that once the District Court had spoken, it settled all issues still outstanding here in the Claims Court, except the issue of fees and expenses. This issue was not settled by the parties even though there were two Federal Circuit opinions directly on point (*Goodrich* and *Devine*) that supported the defendant's position. In short, the defendant believes that the plaintiffs unreasonably refused to settle the attorney fees and expenses point even in the face of established precedent and should not be rewarded by this Court for their intransigence by allowing them to recover for the time expended in filing this motion/application for fees and expenses.

The defendant's position has considerable merit and will be adopted by this Court. As noted earlier, the defendant does not question its obligation to pay attorney fees arising from the litigation of the merits of this case. What it does question is its obligation to pay attorney fees in the fees phase of this litigation. The defendant believes that this Court must look at the various phases of litigation and at the various positions that the Government takes in these phases of the litigation to determine whether attorney fees are appropriate under the circumstances. In support of this position, the defendant cites this Court to *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), where the Court recognized that "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" and that, in some

---

**8.** Mr. Cohen's affidavit indicated that "numerous" telephone calls (for a total of six hours) were made in 1985 and 1986 in working on the settlement. Since his affidavit did not break down the telephone calls by year, the Court has simply deemed one-third of the telephone time to have been expended in 1985 and two-thirds of the time to have been expended in 1986.

cases, a claimant should not be allowed to recover attorney fees incurred in advancing all of his claims. *Hensley,* 461 U.S. at 434–37, 103 S.Ct. at 1939–42.

In *Cornella v. Schweiker,* 741 F.2d 170, 171 (8th Cir.1984), the Court recognized this distinction by noting that "the 'position' we must examine here is analytically dissimilar from the Secretary's 'position' analyzed when we decided the merits." Likewise, in *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984), the Court took this analysis one step further and held that a court may award fees for fees only if the Government's position in the fees litigation was not substantially justified. The Federal Circuit has apparently not spoken to this specific issue and as a result, this Court now writes on a clean slate. It is the opinion of this Court that the rule developed in *Rawlings* provides the most reasonable approach for deciding the current issue. From a policy standpoint, such a rule would have the effect of encouraging Government counsel to protect the public fisc, when to do so would be reasonable, while discouraging challenges to fee awards on a wholly unreasonable basis. Although an opposite rule could be supported by a simplicity argument, the adoption of such a rule would place the Government in the position of having to automatically pay for fees incurred in resolving these questions, not only in situations where the Government's position is unreasonable, but also when the Government is reasonable or even right. This Court simply cannot agree with such a rule. Thus, given the reasonableness of the defendant's current argument, *i.e.,* it is and was supported by established Federal Circuit precedent, this Court finds the defendant's current position to be substantially justified. It also would not be in the interest of justice to award attorney fees to the plaintiffs under these circumstances. Therefore, plaintiffs should not be allowed to recover fees for their efforts expended on the fee award phase of this litigation, *i.e.,* 2.5 hours of Mr. Cohen's time in 1986 and 2.5 hours in 1987.

One final note must be mentioned before making the actual computation to determine the amount of the fee award. The second element of costs to be considered in awarding fees is that of overhead expenses. In order to avoid the considerable evidentiary burdens involved in itemizing, quantifying, and proving overhead expenses, the Federal Circuit and the MSPB have adopted a 100 percent rule. Under this rule, overhead is deemed to be 100 percent of compensation. Neither party here challenges this rule. Although the rule is very attractive given its simplicity, the MSPB in *Powell,* and the Federal Circuit implicitly in endorsing *Powell,* recognized that closely approximating cost was the overriding concern. Hence, the Board conditioned the 100 percent allowance on "the absence of evidence from either appellant * * * that such an allowance * * * [was] substantially excessive or insufficient in the particular case * * *." *Powell,* 8 M.S.P.R. at 332. There being no evidence as such in the present case, this Court hereby adopts the 100 percent rule as a well reasoned approach to awarding overhead costs and applies said rule accordingly.

In view of the above discussion, the Court computes AFGE's fee award for compensation and overhead expenses as follows:

Ms. Snyder

| | Hours | | Rate | | Overhead [9] | | Totals |
|------|------|---|--------|---|----|---|-----------|
| 1983 | 32.8 | × | $15.85 | × | 2 | = | $1,039.76 |
| 1984 | 2.3 | × | 17.31 | × | 2 | = | 79.63 |
| 1985 | 0.4 | × | 17.83 | × | 2 | = | 14.26 |

Subtotal (Snyder) $1,133.65

**9.** This calculation is necessary to reflect the 100% adjustment for recovery of overhead expenses.

Mr. Cohen

| | Hours | | Rate | | Overhead [9] | | Totals |
|---|---|---|---|---|---|---|---|
| 1985 | 2.0 | × | $18.98 | × | 2 | = | $ 75.92 |
| 1986 | 7.5 [10] | × | 20.14 | × | 2 | = | 302.10 |
| 1987 | 0.0 [11] | × | 20.75 | × | 2 | = | 0.00[11] |

Subtotal (Cohen)  $ 378.02
TOTAL FEES  $1,511.67

Thus, the total award for attorney fees (compensation and overhead) in the present case will be $1,511.67.

## II. Attorney Expenses

█ In addition to attorney fees based on an hourly rate, plaintiffs claim $160 for attorney out-of-pocket expenses arising during the litigation. The itemized expenses include telephone charges and photocopies.

The Government challenges only the $30 that plaintiffs list as "Xeroxing—legal research and filings" (300 copies). *See* Plaintiffs' Application, Services Performed by Martin R. Cohen. Defendant argues that photocopies are a taxable cost rather than an attorney expense and that they are not recoverable because the parties have made a settlement that allocates costs. *See* Stipulation for Entry of Judgment, paras. 5 and 12. Defendant relies on *Bennett v. Department of the Navy*, 699 F.2d 1140 (Fed.Cir.1983), for the proposition that photocopying is a taxable cost.

In *Bennett*, the Federal Circuit distinguished attorney fees and out-of-pocket expenses from taxable costs, all of which arise in the course of litigation. Given this distinction, the Court noted that taxable costs were not to be awarded under the general attorney fee statutes absent a contrary congressional intent. *Bennett, supra*, 699 F.2d at 1144. Instead, taxable costs were to be recovered in accordance with 28 U.S.C. § 1920 (1982). It is clear that the Federal Circuit felt that photocopying expense was a taxable cost within the meaning of section 1920. *Bennett, supra*, 699 F.2d at 1146; *see also, Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 867

(7th Cir.1981); *Koch v. Department of Commerce*, 19 M.S.P.R. 219, 221–22 (1984).

Although a possible distinction could be made between photocopying papers that were actually filed in the course of litigation and photocopying cases for research purposes, with the latter expense being allowed as a necessary out-of-pocket expense, no authority apparently exists for so doing. In any event, since the plaintiffs failed to make clear in their application/motion whether the photocopying was done for legal research purposes (which arguably would be an allowable attorney out-of-pocket expense) or whether the photocopying was accomplished for purposes of filing (which clearly would be a taxable cost and not allowed as an attorney out-of-pocket expense), the $30 will not be allowed. The burden, of course, is on the plaintiffs to make this clear or specific in their application/motion. *Hensley v. Eckerhart, supra*, 461 U.S. at 433, 103 S.Ct. at 1939; *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 405 (Fed.Cir.1987); *Martin v. United States*, 12 Cl.Ct. 223, 227 (1987), *aff'd in part, vacated and remanded on other grounds*, 852 F.2d 1292 (Fed. Cir.1988); *Snyder, supra*, 26 M.S.P.R. at 329. Thus, since the parties have already agreed and settled the amount to be taxable as costs, the plaintiffs are not entitled to receive the $30 listed for "Xeroxing—legal research and filings." The remaining $130 will be allowed as reasonable out-of-pocket expenses in accordance with *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir.1987) (Claims Court has discretion to award attorney out-of-pocket expenses

10. This figure is derived from adjusting the total hours applied for (10 hours) by those hours for which recovery was not allowed (2.5 hours expended on fee phase of current litigation).

11. This figure is derived from adjusting the total hours applied for (2.5 hours) by those hours for which recovery was not allowed (2.5 hours expended on fee phase of current litigation).

which are reasonably and necessarily incurred by counsel).

## CONCLUSION

Plaintiffs' application/motion for attorney fees is granted, but only to the extent such fees do not exceed the union's cost in providing counsel. Plaintiffs' attorney fees award is $1,511.67 which consists of reimbursement for compensation and overhead expenses. In addition, the Court awards $130 for reimbursement of attorney out-of-pocket expenses. Thus, the total recovery due the plaintiffs on their application/motion for attorney fees and expenses is $1,641.67.

IT IS SO ORDERED.