Tomas ROSARIO, Ovidio Vega and Ray Cabel, Plaintiffs-Appellees, Cross-Appellants,

v.

AMALGAMATED LADIES' GARMENT CUTTERS' UNION, LOCAL 10, I.L.G. W.U., Defendant-Appellant, Cross-Appellee,

and

Abe Dolgen, Individually and as Manager of Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U., Defendant.

Tomas ROSARIO, Ovidio Vega and Ray Cabel, Plaintiffs-Appellees, Cross-Appellants,

v.

AMALGAMATED LADIES' GARMENT CUTTERS' UNION, LOCAL 10, I.L.G. W.U., Defendant-Appellant, Cross-Appellee,

and

International Ladies' Garment Workers' Union, AFL–CIO, Defendant.

Nos. 175, 253, Dockets 84–7469, 84–7491.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1984.

Decided Nov. 30, 1984.

Richard M. Zuckerman, New York City (John Doar Law Offices, New York City, of counsel), for Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.

Burton H. Hall, New York City (Hall & Sloan, New York City, of counsel), for Tomas Rosario, Ovidio Vega and Ray Cabel.

Before MANSFIELD, KEARSE and CARDAMONE, Circuit Judges.

MANSFIELD, Circuit Judge:

The principal issue on this appeal is the reasonableness of an attorney's fee award to union members who were successful in the prosecution of some claims based on denial of their rights under § 101 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 (1982), but unsuccessful in the prosecution of others.

Local 10 appeals from a judgment of the Southern District of New York, Vincent L. Broderick, *Judge*, awarding plaintiffs attorney's fees and expenses totalling $92,-849.50 against Amalgamated Ladies' Garment Cutters' Union, Local 10, International Ladies' Garment Workers' Union (ILGWU), for services in their prosecution of two actions under § 101 against it and its manager, Abe Dolgen. Plaintiffs cross-appeal from Judge Broderick's reduction of the more than $265,000 in attorney's fees sought by them. We reduce the award to $90,976.50 and affirm the district court's judgment as so modified.

The background of this litigation, now before us for the third time, is set forth in an opinion of Chief Judge Constance Baker Motley dated November 14, 1977, reported at 441 F.Supp. 657 (S.D.N.Y.), and in our earlier opinion at 605 F.2d 1228 (2d Cir. 1979). Briefly, the plaintiffs, three dissident members of Local 10, brought two actions against it under § 102 of the LMRDA, 29 U.S.C. § 412, which were later consolidated, seeking nullification of certain union disciplinary proceedings and damages for violations of plaintiffs' procedural and substantive rights under LMRDA § 101, 29 U.S.C. § 411. Dolgen was joined as a defendant in the first suit and pendent state law claims were also asserted against him for false arrest and malicious prosecution.[1]

The actions arose out of an altercation between appellants and Dolgen on January 29, 1975, in his Local 10 office and a series of three ensuing disciplinary proceedings against appellants by the Executive Board and Trial Committee of Local 10 and the General Executive Board of the ILGWU. Judge Motley preliminarily enjoined Local 10 from enforcing disciplinary sanctions it had imposed upon appellants. On Novem-

---

1. The second action joined the International Ladies' Garment Workers' Union, AFL-CIO, as an additional defendant.

ber 9, 1976, we affirmed that decision without opinion. On March 23, 1977, a Special Appeal Committee of the General Executive Board of the ILGWU held a fourth disciplinary hearing, intended as a "hearing de novo," which was boycotted by plaintiffs; the Committee found plaintiffs guilty of misconduct and adopted the sanctions previously imposed by the Trial Committee of Local 10. Plaintiffs then filed their second suit, which was eventually consolidated with their first action.

On November 14, 1977, Judge Motley granted a partial summary judgment in favor of the plaintiffs, ruling that in violation of § 101 of LMRDA they had been denied a fair hearing at the three Local 10 trials, that they had wrongfully been barred from attending union meetings and that they were entitled to tape-record their disciplinary trials and to be retried before a different union tribunal from that which had found them guilty. After discovery, the damage claims were tried in April 1978 before a jury, which awarded compensatory and punitive damages against Local 10 for wrongful discipline and against Dolgen for false arrest and malicious prosecution. Shortly prior to the trial Local 10 filed a trial brief seeking reconsideration and a vacatur of the court's November 14, 1977, grant of summary declaratory judgment with respect to plaintiffs' rights under § 101 of LMRDA, which was denied on the first day of trial.

Trial lasted 15 days, resulting in verdicts awarding $3,000 compensatory damages and $30,000 punitive damages against Local 10 for violation of plaintiffs' LMRDA rights, $1,500 compensatory damages and $7,500 punitive damages against Dolgen on plaintiffs' LMRDA claims and $6,000 compensatory and $5,000 punitive damages against Dolgen on plaintiffs' state law pendent claims for false arrest and malicious prosecution. Following the trial, the district court granted plaintiffs' application for attorney's fees and expenses based on their LMRDA claims, subject to a later determination of the amount.

Upon appeal we affirmed Judge Motley's rulings with respect to the plaintiffs' rights to tape-record union disciplinary proceedings against them and to retrial of the disciplinary proceedings before a different union tribunal. However, we reversed the district court's decision to the extent that it prohibited the union from imposing the disciplinary sanction of suspension, for a specified period, of a member's right to attend union meetings. Accordingly, we set aside the LMRDA-based damage awards against Local 10 and Dolgen, which had been grounded in part on the alleged deprivation of their right to attend Local 10 meetings. We affirmed the district court's ruling that plaintiffs would be entitled to "a reasonable attorney's fee for vindication of their rights under the LMRDA," 605 F.2d at 1251. On November 20, 1979, the Circuit denied plaintiffs' petition for rehearing and on April 28, 1980, the Supreme Court denied plaintiffs' petition for certiorari. 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).

Upon remand Chief Judge Motley recused herself and the case was assigned to Judge Broderick for determination of the amount of the attorney's fees to be awarded to plaintiffs. On July 28, 1981, Burton H. Hall, Esq., who had represented plaintiffs throughout the litigation, filed a petition setting forth his qualifications, a summary describing the major services rendered by him in the cases over the five-year period from March 1975 to March 1980, the approximate hours devoted chronologically to these services (totalling 1,676 hours), a list of briefs, opinions, orders and other papers filed in connection with the actions, discovery proceedings, motions, trial and appeals, and a schedule of expenses totalling $2,822.59. The petition sought an award of $251,400 for 1,676 hours at a rate of $150 per hour.

When Hall's deposition was taken, it revealed that he, a sole practitioner, had not kept any daily time records and that the description of services and allocation of hours submitted by him represented a reconstruction by his partner and a law school student, neither of whom had

worked on the cases, based on their examination of his annual appointment calendars and extensive files. On or before February 26, 1982, the parties filed with the court their submissions consisting of affidavits of counsel and others, exhibits, memoranda and Hall's deposition transcript. Hall revised his estimate of hours spent to 1,653 hours for the cases plus 148 hours spent on the fee application itself and sought a total fee of $265,050. On April 26, 1984, Judge Broderick heard oral argument and rendered an oral opinion awarding $81,887 for services on the case, $9,570 for preparation and litigation of the fee application and $2,822.50 for expenses. The award totalled $94,279.50. Because of an error in the number of hours spent on the fee application, corrected in a stipulation entered by the parties, the amount of the award was reduced and judgment was entered on May 17, 1984, for $92,849.50.

Judge Broderick arrived at the award by reducing the 1,653 hours claimed by 40% to reflect exclusion of time spent on state law claims and on "federal claims which by their very nature did not or would not have conferred a benefit upon other members of the union." The resulting 991 hours were then reduced by 30% to 693 hours for Hall's failure to maintain time records. The court then applied a $100 hourly rate for services through 1977 and a $130 rate for services from 1978 to 1980, resulting in a total of $81,887 for time spent on the cases. The 148 hours spent on Hall's fee application were reduced by 50% to 74 hours to reflect failure to keep contemporaneous time records. Multipliers of $150 per hour for Hall's time and $70 per hour for his partner Clifton's time were then used to arrive at a fee of $8,140 for time spent on the fee application and litigation. Both parties appeal from the resulting total award of $92,849.50.

### DISCUSSION

In *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), which was successfully argued by plaintiffs' counsel in this case (Burton H. Hall, Esq.), the Supreme Court held that union members who succeed in vindicating rights guaranteed them by § 101 of LMRDA through an action under § 102 may recover attorney's fees when the effect of the attorney's services has been to benefit the union and all of its members.

"[T]here can be no doubt that, by vindicating his own right of free speech guaranteed by § 101(a)(2) of Title I of the LMRDA, respondent necessarily rendered a substantial service to his union as an institution and to all of its members. When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the 'chill' cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.' *Yablonski v. United Mine Workers of America*, 151 U.S.App.D.C. 253, 260, 466 F.2d 424, 431 (1972)." *Hall v. Cole, supra*, 412 U.S. at 8, 93 S.Ct. at 1848.

■ An award of attorney's fees to a prevailing party rests squarely within the district court's discretion and normally will not be disturbed upon appeal. *See Milwe v. Cavuoto*, 653 F.2d 80, 82 (2d Cir.1981). The trial judge is in a better position than an appellate court to appraise the need for and potential benefits derived from the attorney's services, based on the judge's personal observation of counsel's performance and his intimate familiarity with the case. *See Copeland v. Marshall*, 641 F.2d 880, 901 (D.C.Cir.1980) (en banc). In the present case, however, the award was not made by Chief Judge Motley, who had handled the merits of this complicated case throughout its tortuous history, including motions, hearings, a preliminary injunction, extensive opinion, and finally trial, but by a later-assigned judge (Judge Broderick) who had no more familiarity with the case than ourselves. We therefore are in as good a

position as he was to determine what award is appropriate on this record. *See Twentieth Century Fox Film Corp. v. Goldwyn,* 328 F.2d 190, 221 (9th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964).

The general principles governing a fee award to a party who has prevailed on some claims but been unsuccessful on others were recently set forth by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court, after accepting as a starting point "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," pointed out that the party seeking an award "should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433, 103 S.Ct. at 1939. Hours spent on claims unrelated to those forming the basis of the claim giving rise to the fee award must be excluded unless the claims "involve a common core of facts or will be based on related legal theories." Said the Court,

"In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

\* \* \* \* \* \*

"... [T]he most critical factor is the degree of success obtained.

\* \* \* \* \* \*

"There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

\* \* \* \* \* \*

"... We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.

\* \* \* \* \* \*

"We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." 461 U.S. at 435–40, 103 S.Ct. at 1940–43.

Applying these principles here, we are satisfied that it was within the district court's discretion to determine the number of hours spent by plaintiffs' counsel that could reasonably be charged as benefiting Local 10 and its members. Undoubtedly a large amount of Hall's professional time was spent in the successful prosecution of claims that clearly benefited members of Local 10, i.e., the right to tape-record union disciplinary hearings and to a second or successive trial before a tribunal composed of different persons than those who had adjudged a member guilty after an earlier hearing. The effect of the lawsuit, moreover, when coupled with *Feltington v. Moving Picture Machine Operators Union Local 306,* 605 F.2d 1251 (2d Cir.1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980), handed

down simultaneously, was to assure Local 10 members that they could obtain damages and injunctive relief to remedy denial of their intra-union procedural rights.

Although the substantial verdict awarded by the jury for violation of the plaintiffs' LMRDA rights was largely set aside because it included a recovery for one claim that was held on appeal not to be actionable (i.e., alleged wrongful discipline of plaintiffs by excluding them from union meetings), it had the potential effect of deterring the union from denying members their due process procedural rights guaranteed by § 101 of LMRDA and of encouraging union members to enforce those rights through § 102. One union member, David Spitzer, has sworn that prior to plaintiffs' success in the lawsuit Local 10 had frequently used the local's disciplinary processes for the purpose of intimidating and punishing rank-and-file members who opposed the local's leadership and its policies, denying cross-examination or presentation of a defense and resorting to fraudulent or erroneous notes of the local's disciplinary proceedings in order to prevent the General Executive Board of the ILGWU from setting aside the local's disciplinary action. When a second disciplinary hearing was required the local would in effect guarantee the identical disciplinary action by having the charges tried before the same local trial committee that had found the member guilty. Following the plaintiffs' successful judgment against Local 10 these improprieties stopped.

■ Local 10 contends that time devoted by Hall to trial of the damages issues should be excluded for the reason that the plaintiffs had already prevailed through a summary declaratory judgment on the issues upheld (tape-recording and a different tribunal for a later hearing) and failed thereafter to recover on any of the other issues. We disagree. If Local 10, upon the grant of summary judgment, had ceased any further litigation of these issues and had consented to entry of a nominal award in recognition of plaintiffs' rights, see *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978), further litigation of the issues would have been unnecessary. Instead, however, Local 10 continued its vigorous opposition before and into trial as well as on the later appeal. On the eve of trial, March 27, 1978, it filed a 49-page printed "Trial Memorandum" plus addenda, in which it asked the district court to reconsider and vacate its earlier ruling. The union argued at length that since the court's November 1977 decision was *sua sponte*, no motion for summary judgment having been filed, and since no final judgment had been entered with respect to the matters decided, the court was free to re-evaluate its decision. Local 10 represented that it was prepared to introduce evidence that the plaintiffs had in fact made a tape-recording of the first union disciplinary hearing, and it argued that the question of plaintiffs' right to tape-record the hearings therefore need not have been reached. Local 10 also contended that the union hearings were fairly conducted, and that the members of the disciplinary boards based their decisions on the evidence before them without any bias against the plaintiffs. The union also urged Judge Motley to follow Judge Goettel's conflicting decision in *Feltington v. Moving Picture Machine Operators Union Local No. 306*, 97 L.R. R.M. 2517 (S.D.N.Y.1978), which had held that a different tribunal was not required at a second union disciplinary hearing, a ruling that was later reversed, *Feltington, supra*, 605 F.2d at 1256–57.

The union's motion and a similar motion filed by ILGWU were argued at length on the first day of trial before Judge Motley, who denied them. However, that decision was not appealable until trial of the remaining issues had been completed. Fed. R.Civ.P. 54(b). At trial, extensive evidence was introduced with respect to tape-recording and the conduct of successive union disciplinary trials of the plaintiffs before the same union tribunal. Moreover, these subjects were argued by counsel in their summations and were referred to by Judge Motley in her instructions to the jury. In answer to Question 4 submitted by the trial judge the jury found that Dolgen, acting in his capacity as manager of Local 10, had "dominated and manipulated the [union]

trials and their resultant punishment in order to get revenge against plaintiffs." In answer to Question 5 the jury found that the plaintiffs had sustained their burden of proof "that they were injured by Local 10's violations of federal law which the court found had occurred with respect to the second union trial."

■ Local 10 argues that since we reversed the jury's award of damages to the plaintiffs on their LMRDA claims they are not entitled to an attorney's fee for the trial time spent on those claims, including the two on which they prevailed. We disagree. Our reversal was based on the fact that the damage award had been founded in part upon the erroneous theory that suspension of a member's right to attend meetings was an improper disciplinary sanction and in part on the paucity of evidence of mental or emotional distress attributable to the denial of due process. We recognized, however, that in any event plaintiffs might have recovered nominal damages as a matter of right under *Carey v. Piphus, supra,* 435 U.S. at 266–67, 98 S.Ct. at 1053–54, for Local 10's deprivation of the plaintiffs' due process rights. Regardless of the errors in assessment of compensatory and punitive damages, the wrongfulness of Local 10's conduct continued to play an important role in the trial and those findings of the jury with respect to its misconduct that were not reversed by us on appeal were clearly of benefit to the union and its membership regardless of the amount of provable damage to plaintiffs.

Thus trial of the due process issues was important and, regardless of the damages that might be recovered on the due process issues, the time spent by Hall on the successful pursuit of those issues benefited the union and its members. On the other hand, it is equally clear that some of Hall's time was devoted to claims that were unrelated to those benefiting its members, such as the plaintiffs' state law claims against

Dolgen for malicious prosecution and false arrest. In between these extremes there were claims which, although different from the issues on which the plaintiffs prevailed, arose out of a common core of facts or were not so discrete as to be easily separable, such as claims based on the impermissibility of disciplinary exclusion of members from union meetings or on retaliatory discipline. The transcript of the damages trial, moreover, reveals numerous instances where the evidence of damages attributable to these claims was treated as equally applicable to the due process claims on which the plaintiffs prevailed.

■ In determining what portion of Hall's time was devoted to related and unrelated claims respectively the district court was handicapped by the absence of any accurate daily records of the hours spent by him on each of plaintiffs' claims. If Hall's services had been rendered at a later time, he would have been obligated to keep such records on penalty of being denied any fees at all. *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983).[2] Hall's failure to keep such records is inexcusable. However, we recognize that even if he had kept accurate time records, much of his professional time was spent on related claims or on unrelated claims arising out of a common core of facts and could not in any event be separated out in scalpel-like fashion on a claim-by-claim basis. Some "billing judgment" is therefore necessary in light of the interrelatedness of certain claims and the extent of the overall success achieved.

Faced with these circumstances we are satisfied that, with some modifications, Judge Broderick's approach was generally a sensible one. Normally we would limit ourselves to pointing out those respects in which the district court's decision should be modified and then remand the case for further proceedings. However, as has

---

**2.** Our decision in *New York State Association for Retarded Children* cannot be labeled as a surprise. The bar had previously been warned that fees might at least be reduced for failure to keep adequate time records. *See In re Hudson & Manhattan R.R. Co.,* 339 F.2d 114, 115 (2d Cir.

1964); *Ross v. Saltmarsh,* 521 F.Supp. 753, 761–62 (S.D.N.Y.1981), *aff'd without op.,* 688 F.2d 816 (2d Cir.1982); *Kane v. Martin Paint Stores, Inc.,* 439 F.Supp. 1054, 1055–56 (S.D.N.Y.1977), *aff'd without op.,* 578 F.2d 1368 (2d Cir.1978).

been suggested by Local 10, since this case is now in its ninth year and on its third appeal, we have decided to be more specific in our disposition, with the hope that the litigation will finally be terminated.

■ First of all, we believe that the 116 hours spent by Hall on plaintiffs' petitions to the Circuit for rehearing and to the Supreme Court for a writ of certiorari should be eliminated entirely rather than reduced by 40% since that time was totally unproductive and added nothing to the success and benefits already achieved. Along the same lines, the 148 hours spent on Hall's fee application should be eliminated entirely for the reason that they resulted directly from Hall's failure to keep any contemporaneous time records.

■ With respect to the balance of approximately 1,500 hours spent by Hall on the claims, we believe that the 40% reduction made by the district court was excessive and that this time should be reduced by only 30%. In reaching this conclusion we note that the 2,155 hours expended by counsel for Local 10, Emil Schlesinger, Esq. and experienced attorneys of the distinguished firm of Paul, Weiss, Rifkind, Wharton & Garrison (Simon Rifkind, Esq., Jay Topkis, Esq., and then-associate Richard Zuckerman) in defending plaintiffs' claims against it substantially exceeded the estimated 1,537 hours (not including 116 hours on the petition for rehearing and certiorari and 148 hours on the fee application) spent by Hall. In addition, the ILG-WU was represented in the action by separate legal counsel and defendant Dolgen by the firm of Vladeck, Elias, Vladeck, Zimmy & Englehard, P.C. The total time expended by defense counsel on the case has been estimated by Hall as approximately 5,000 hours. Moreover, the entire record, including the trial transcript reveals that most of Hall's time was spent either on the LMRDA claims on which plaintiffs succeeded or on claims that were inextricably entwined with them rather than on the unrelated claims against Dolgen for false arrest and malicious prosecution.

■ The district court did not abuse its discretion in ruling that the hours re-

sulting from the foregoing process should be reduced by 30% because of Hall's failure to keep any contemporaneous records of the services rendered by him. *See Hensley v. Eckerhart, supra,* 461 U.S. at 438 n. 13, 103 S.Ct. at 1942 n. 13 (approving a 30% reduction in hours to compensate for the failure to keep time records and for the inexperience of counsel). The hourly rates used by the district court, $100 per hour for the period through 1977, $130 for the period 1978 through 1980, and $150 thereafter are also affirmed as reasonable under the circumstances and within its discretion. As an experienced lawyer admitted to practice in New York in 1957 Hall has developed a good reputation in this specialized field, achieving considerable success in protecting union members from abuse at the hands of union officials. *See, e.g., Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Salzhandler v. Caputo,* 316 F.2d 445 (2d Cir.), *cert. denied,* 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); *Schonfeld v. Raftery,* 381 F.2d 446 (2d Cir.1967); *Hart v. Local Union 1292,* 497 F.2d 401 (2d Cir.1974); *Feltington v. Moving Picture Machine Operators Union Local 306, supra.* He has also authored various articles. Moreover, the issues in this case were novel and difficult. Lastly, since the plaintiffs in this case are union members, who were obviously unable to finance Mr. Hall's charges or to pay him a retainer, the risk for him that he might not be compensated for his services was a substantial one.

Lastly we find no abuse of discretion in the district court's allowance of plaintiffs' expenses of $2,822.50 incurred in the prosecution of the case. They are sufficiently detailed and there is no evidence that they were not necessary. *See In re Air Crash Disaster,* 687 F.2d 626, 629 (2d Cir.1982).

■ Accordingly, the district court's allowance of attorney's fees and expenses to plaintiffs is changed as indicated. As so modified the judgment of the district court is remanded with directions to enter judgment in favor of the plaintiffs in the sum of $90,976.50. The district court's denial of plaintiffs' application for legal fees in excess of the amount allowed by it is af-

firmed except to the extent indicated by us. Each party will bear its own costs of these appeals and its attorney's fees incurred in prosecuting the appeals.