William J. WARD, Plaintiff,

v.

Jessie BROWN, et al, Defendants.

No. 92–CV–6346L.

United States District Court,
W.D. New York.

Aug. 22, 1995.

Mark D. Roth, American Federation of Government Employees, Washington, DC, for William J. Ward.

James Robert Layton, United States Attorney's Office, Washington, DC, for Edward Derwinski, Michael Lawson.

Brian M. McCarthy, Asst. U.S. Atty., United States Attorney, Rochester, NY, James Robert Layton, United States Attorney's Office, Washington, DC, for Department of Veterans Affairs.

### DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, William J. Ward, brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (1988), to review a decision by the defendant Secretary of Veterans Affairs ("Secretary"). Plaintiff, a registered nurse at a Veterans Administration ("VA") hospital, had been discharged for verbally abusing a patient. Plaintiff alleged that both the finding of verbal abuse, and the penalty of discharge, were arbitrary and capricious. He sought reversal of the Secretary's decision, reinstatement, back pay, redaction of his personnel record, costs and attorney's fees.

After both sides moved for summary judgment, this court granted in part and denied in part the motions. In a Decision and Order entered December 21, 1992, I held that the Secretary's finding with respect to one of the charged incidents of patient abuse was

not arbitrary and capricious. I also held, however, that the penalty of discharge was arbitrary and capricious in view of the VA's policy requiring similar penalties for similar offenses. I remanded the case to the Secretary to redetermine the appropriate penalty.

The Secretary appealed, and on May 2, 1994, the Court of Appeals for the Second Circuit affirmed the decision as modified. The Court of Appeals agreed with this court that the Secretary's decision on the penalty was arbitrary and capricious, though for slightly different reasons. Rather than finding that the penalty was not similar to those imposed for similar offenses, the court held that the Secretary had simply failed to consider the similar-penalty policy at all. The court remanded to the Secretary for a determination of the appropriate penalty under its stated policy.

On remand, the Secretary determined that termination was not the proper penalty under the circumstances, and reduced the penalty to a suspension. Plaintiff was reinstated and, therefore, entitled to back pay.

█ Prior to the Secretary's decision, plaintiff had moved for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. After the Secretary's decision reducing the penalty to a suspension, plaintiff added a request for fees under the Back Pay Act ("BPA"), 5 U.S.C. § 5596(b), which, unlike EAJA, has no statutory maximum hourly rate. Both sides now agree that the BPA is the appropriate statute for determining attorneys fees.

Plaintiff seeks an award of $3700 to the American Federation of Government Employees ("AFGE") Local 3306, plaintiff's union, as reimbursement for fees paid by the union to Susan Cooney, Esq. Cooney had represented plaintiff during the administrative proceedings that occurred prior to commencement of this action.

Plaintiff also requests an award of $42,282.16 to the AFGE Legal Representation Fund, for work performed by Martin R. Cohen, Esq., a salaried attorney employed full-time by AFGE. Cohen represented plaintiff in the instant litigation. His requested rate is $171.82 per hour, based on alleged prevailing rates in the Philadelphia area where Cohen practices.

Defendants raise four objections to the fee request. First, defendants contend that the motion should be denied completely because of plaintiff's failure to supply contemporaneous time records. Defendants also contend that any award that is made should be reduced for three reasons: that the award should be limited to actual costs, *i.e.* Cohen's salary plus overhead expenses, rather than to prevailing market rates; that the hours claimed are excessive; and that the award should be reduced to reflect what defendants contend was plaintiff's limited success on the merits.

### DISCUSSION

*I. Standard for Attorney's Fees Under Back Pay Act*

There is no dispute about the standard for determining whether a party is entitled to attorney's fees under the BPA. Pursuant to 5 U.S.C. § 5596(b)(1)(A), an employee who is found to have been subjected to an unjustified personnel action resulting in a loss of pay is entitled to receive reasonable attorney fees related to the personnel action.

Section 5596(b)(1)(A)(ii) provides that attorney's fees are to be awarded in accordance with standards established under 5 U.S.C. § 7701(g). The latter section in turn states that if an employee is a prevailing party, attorney's fees may be awarded in any case in which "payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit."

Courts have considered various factors in making these assessments, including "agency bad faith, action which is clearly without merit or wholly unfounded, gross procedural error, and whether the agency knew or should have known *ab initio* that it would not prevail on the merits." *Knight v. United States,* 982 F.2d 1573, 1583 (Fed.Cir.1993). Courts have also looked to some of the same factors applied under EAJA, which requires a determination of whether the agency's posi-

tion in the litigation was substantially justified. *See, e.g., American Fed'n of Gov't Employees, Local 3882 v. Federal Labor Relations Auth.*, 994 F.2d 20, 23 (D.C.Cir.1993).

## II. Whether a Fee Award Is Warranted in the Interest of Justice

I find that some award of attorney's fees is warranted in this case. As the Court of Appeals noted, "there is no evidence ... that the [VA's Disciplinary] Board considered—much less applied—the policy of like penalties for like offenses." The Secretary's own regulations required consideration of that policy, and it was arbitrary and capricious for the Board not to do so. Likewise, the Secretary, upon review of the Board's findings, also failed to consider this policy. This failure to follow VA regulations violated the APA and deprived plaintiff of a meaningful review. A fee award is therefore warranted in the interest of justice for the time reasonably spent by plaintiff's counsel in prosecuting this action.

Defendants contend that any award should be limited to reflect plaintiffs' limited success. Defendants contend that because plaintiff initially sought not only reinstatement, but also reversal of the finding of patient abuse, plaintiff did not achieve everything that he sought. Defendants note that although the penalty was reduced, the abuse finding remains on plaintiff's record.

Although the plaintiff's degree of success is an important factor in determining the proper size of the award, *see Hensley v. Eckerhart*, 461 U.S. 424, 431–32, 103 S.Ct. 1933, 1938–39, 76 L.Ed.2d 40 (1983), I do not believe that the award should be reduced in the instant case simply because the abuse finding was not overturned. Although that was one of the objects of the suit, it is clear that plaintiff's main goal was reinstatement, which he achieved. In light of plaintiff's victory on that major issue, his failure to prevail on the lesser matter of the abuse finding does not significantly detract from his overall success. *See Seigal v. Merrick*, 619 F.2d 160, 165 (2d Cir.1980) (reversing deduction from fee award for work on "unfruitful," but not frivolous, claims; ERISA case).

## III. Compensable Hours

Having found that plaintiff is entitled to a fee award, I must now determine how much of the claimed time was reasonably spent and therefore compensable. After reviewing the records submitted by plaintiffs' counsel, I find that there should be a substantial reduction from the hours claimed, for two reasons. First, some of the claimed time is, in my view, duplicative and excessive. Second, counsel's failure to supply the court with contemporaneous time records makes it appropriate to reduce the award to reflect the possible inaccuracy of the records, which are based mostly on counsel's later reconstruction of the time that he believes he spent on the case.

Plaintiff seeks an award for 23.4 hours for Cohen's attendance at a disciplinary hearing in 1990. This hearing occurred prior to the commencement of this action, while the case was still at the administrative level. Plaintiff was represented by Susan Cooney at that time, and plaintiff also seeks an award of $3700, for Cooney's representation, including the time that she spent at the 1990 hearing.

I do not believe that any award for Cohen's time at the hearing is appropriate. Although Cohen states that he assisted Cooney and that he also attended the hearing to familiarize himself with the case, on the basis of the record before me, it appears that Cohen's time was merely duplicative of Cooney's. It was Cooney who actually represented plaintiff at the hearing, and Cohen has not demonstrated that he played any role in the actual conduct of the hearing. These hours will therefore not be included in the award. *See Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir.1992) (affirming reduction of award to account for duplicative work); *Seigal*, 619 F.2d at 164–165 (same).

Defendants also object to several other specific items, such as the 29.9 hours claimed for research and drafting the complaint, and the 6.3 hours for preparing amended complaints to add First Amendment and anti-union claims.

The appropriateness of these requests, however, is also related to the significant issue concerning contemporary time records. Defendants contend that the motion for fees should be denied completely because the Second Circuit requires that such motions be supported by contemporaneous time records specifying relevant dates, hours spent, and work done. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1160 (2d Cir.1994); *Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). Here, Cohen has produced reconstructed time records based on his after-the-fact review of the work that he did in this case.

When considering this issue, it is important to note that the litigation was commenced in the District Court for the District of Columbia. It was transferred here on July 6, 1992. With this in mind, I believe that it is useful to break the fee request down into three periods: time claimed up until July 6, 1992; time claimed from July 6, 1992, through December 1, 1994; and time claimed from December 2, 1994 to the present. The reason for the last two categories is that beginning on December 2, 1994, *after* he received defendants' brief, Cohen began keeping contemporaneous records.

■ As to the first period, that is, until the case was transferred to this district on July 6, 1992, I do not believe that it would be fair to apply the standards of the Second Circuit for work that was performed while the case was pending in the District of Columbia. It would be unreasonable to expect an attorney to keep time records in compliance with the standards of a different circuit than the one in which a case is pending. I will therefore determine the propriety of a fee award in accordance with the law in the District of Columbia Circuit on this issue.

Plaintiff contends that the District of Columbia Circuit did not have a rigid contemporaneous-record requirement while this case was pending. While perhaps not as strict as the Second Circuit's requirement, however, the District of Columbia Circuit has stressed the importance of keeping contemporaneous records. For example, in *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C.Cir.1982), the court

stated that "casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." In *Kennecott Corp. v. E.P.A.,* 804 F.2d 763, 767 (D.C.Cir.1986), the court stated that "contemporaneous time charges should be filed with the motion for attorneys' fees as a matter of course, and certainly should be provided once legitimate questions are raised by the opposing party." And in *In re Donovan,* 877 F.2d 982, 994 (D.C.Cir.1989), the court stated that it would "require that fee applications include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any."

All three of the above-cited cases were decided prior to commencement of this case. Thus, plaintiff's attorney should have been alerted to the importance of maintaining contemporaneous records.

Recent case law from the District of Columbia Circuit suggests that a motion for fees may be denied entirely if it is inadequately documented. In *In re North,* 32 F.3d 607 (D.C.Cir.1994), the court denied a petition for attorney's fees where an attorney had not kept contemporaneous records, but instead relied on his client's records of the time they had spent together, which the client constructed from his appointment calendar. Stating that "[w]e cannot begin to evaluate the reasonableness of attorney time expended" based on such records, the court stated that it therefore had to deny the petition *in toto. Id.* at 608.

There is also some authority from the District of Columbia Circuit indicating that an award can be reduced if it is inadequately documented. For example, in *Kennecott,* the court reduced an award by fifteen percent where the petitioners provided only monthly bills sent by the law firm to its clients, which did not separate work performed on the litigation in question from other work, and generalized summaries of work performed on the case that were reconstructed from contempo-

raneous time records. In *In re Sealed Case*, 890 F.2d 451, 455 (D.C.Cir.1989), in which a law firm had represented the subject of an independent-counsel investigation, the court deducted ten percent from the firm's total bill because the documentation was "disjointed, and [wa]s devoid of any specification of the names of the individuals who performed particular described tasks, or the specific amounts of time devoted to such tasks." Describing the substantiation for these billings as "borderline," the court said that it nevertheless "recognize[d] that the firm did the necessary work to marshal the facts as required by the Independent Counsel," and that the bill was reasonable in comparison with bills submitted in other independent-counsel cases. *Id.*

As stated, in the instant case Cohen has not provided actual contemporaneous time records. Nor is his documentation truly reconstructed from such records. He states in an affidavit that in calculating the time that he spent on the case, he "reviewed [his] desk and assignment calendars for the dates in question and the various filings and documents in [his] file," including correspondence and some rough drafts of filed documents. Cohen Aff. (Item 53) ¶ 5.

Such a reconstruction, made long after the work was performed, is certainly less than ideal, under Second Circuit or District of Columbia law.[1] The itemization of Cohen's time is reasonably well detailed, however. Although a few of the items (e.g., five hours on September 28 and 29, 1993 described as "prep for oral arg") make it difficult to discern the exact nature or subject of the work in question, for the most part his listings provide specific explanations of what he did each day.

█ Thus, Cohen has not simply provided a lump-sum of his time, or a list of hours unaccompanied by any explanation of the work performed. At the same time, however, such an after-the-fact reconstruction presents the danger that the attorney's memory, and his estimates of how long it would have taken to perform various tasks, could be faulty. Since the Court of Appeals for the District of Columbia Circuit appears not to have an ironclad requirement of contemporaneous records, and to allow for a reduction in the hours claimed in such cases, I find that a fifteen percent reduction is appropriate for the 94.1 hours claimed from March 25, 1991 through May 15, 1992. Reduced by fifteen percent, the total is 79.99 hours, which I will round off to 80 hours.

Susan Cooney's work for which an award is requested also occurred prior to the case being transferred here; in fact, it occurred prior to the commencement of the district court action in the District of Columbia. This part of the request is not well documented, however. Plaintiff has submitted a bill from Cooney to AFGE Local 3306 for 40.45 hours of work performed from June 12, 1989 through April 20, 1990. Plaintiff has also submitted copies of checks from Local 3306 to Cooney that total $3700.[2]

Although the bill is itemized, it is not apparent whether it is based on contemporaneous time records. Therefore, although I will award fees for the services listed on the bill, because it is not supported by contemporaneous records I will also reduce the time

---

1. The court in *In re North*, which denied a fee petition completely, came close to holding that an attorney *must* maintain contemporaneous records in order to be entitled to a fee award. Distinguishing *In re Meese*, 907 F.2d 1192 (D.C.Cir.1990), in which the court disallowed ten percent of a fee petition based on inadequate documentation, the court in *North* noted that the "attorneys in *Meese* maintained and submitted contemporaneous records of the time they expended, even though some entries were inadequate," whereas the attorney in *North* "maintained no contemporaneous record at all." The court stated that "[t]his failure [wa]s controlling" and required that the petition be denied. *Id.* at 609.

Although this statement appears to set forth a contemporaneous-record requirement virtually as strict as the Second Circuit's, because *North* was decided after the time claimed here for work performed while the case was in the District of Columbia, and because plaintiff's attorney apparently at least has a record of his daily assignments from which to reconstruct his time, I will not disallow his claim altogether, and will instead apply a reduction.

2. The total for 40.45 hours of work at $90 per hour is $3640.50. The reason for the extra $359.50 in the checks is not apparent.

claimed by fifteen percent. The remaining time, 34.38 hours, multiplied by $90 per hour, gives a total of $3094.43.

■ As to the time claimed during the second period, from October 14, 1992 through December 1, 1994, Second Circuit law must apply. The Court of Appeals for the Second Circuit has set forth a strict requirement that fee applicants maintain contemporaneous records. This rule was first announced in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983), in which the court stated that "[h]ereafter, any attorney ... who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records." In *Lewis*, 801 F.2d at 577, the court stated that while it "recognize[d] that other courts have held that affidavits summarizing time logs are acceptable," the rule announced in *Carey* was that "*no* attorneys' fees could be collected if a fee application was not adequately documented after the date of the *Carey* opinion." The court stated that the contemporaneous "records' importance is so critical in determining a reasonable fee as to make their production by the most efficient method possible a prerequisite." *Id.*

More recently, in *Cruz*, 34 F.3d at 1160, the court held that a typed listing of attorneys' hours from their computer records "f[ell] sufficiently within the meaning of 'contemporaneous,'" since the attorneys had kept contemporaneous records, and their documentation was based on those records. Thus, while not requiring the submission of contemporaneous records, the court gave no indication that it was straying from its requirement that the attorney at least maintain such records.

Plaintiff contends in his reply brief that "[c]ourts in this circuit have found various occasions [sic] to grant a reduced attorney fee award where contemporaneous records have not been kept." Reply Brief (Item 55) at 5. Generally, however, the fee applicants in those cases *maintained* contemporaneous records; they simply did not submit them, and instead supplied the court with records that had been reconstructed from the contemporaneous records. *See, e.g., Johnson v. Kay*, 742 F.Supp. 822, 837 (S.D.N.Y.1990) (reducing amount sought by twenty percent where reconstructed timesheets were submitted to clarify contemporaneous timesheets); *Carrero v. New York City Housing Auth.*, 685 F.Supp. 904, 909 (S.D.N.Y.1988) (accepting affidavits reconstructed from contemporaneous records, but denying remuneration for hours spent on fee application); *but see United States Football League v. National Football League*, 704 F.Supp. 474, 477 (S.D.N.Y.) (accepting typed copy of contemporaneous computer record, but noting that "'[r]econstructed' records, of course, would not be sufficient"), *aff'd*, 887 F.2d 408 (2d Cir.1989).[3]

---

**3.** Besides *Johnson v. Kay*, plaintiff cites two other district court cases from this circuit to support his assertion that a reduction is appropriate. Neither case supports a different result here. In *Monaghan v. SZS 33 Associates, L.P.*, 154 F.R.D. 78 (S.D.N.Y.1994), the court reduced the plaintiffs' attorney's claimed hours by thirty percent for failing to keep contemporaneous records. *Monaghan* was an unusual case, however, in that it was a premises liability action in which the plaintiffs' attorneys were retained on a contingency-fee basis. It was only after the court found, well into the litigation, that the defendant had deliberately failed to produce relevant documents, and that sanctions in the form of attorney's fees were warranted, that plaintiffs were aware that they would be making a fee application. Thus, as the court noted, it was not unreasonable for plaintiffs' attorneys not to have kept contemporaneous records, given their contingent fee arrangement. *Id.* at 84. Furthermore, out-

right denial of the application would have effectively vitiated the intended effect of the sanctions.

In the other case cited by plaintiff, *Orshan v. Macchiarola*, 629 F.Supp. 1014 (E.D.N.Y.1986), the court made a reduced fee award where the attorney had not furnished contemporaneous time records. However, it is not clear from the court's opinion what the records that were submitted were based on. Also, in support of its statement that the failure to supply contemporaneous records "would justify a 30% reduction as a sanction for noncompliance" with the Second Circuit's requirements, *id.* at 1019, the court cited *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 749 F.2d 1000, 1008 (2d Cir.1984). In *Rosario*, the Court of Appeals, though terming an attorney's failure to keep contemporary records "inexcusable," *id.* at 1007, applied a thirty percent reduction. However, the litigation in *Rosario* began in 1975; thus, the vast majority of the time claimed was expended prior to *Carey*, which did not apply retroactively.

Again, plaintiff's counsel's time listings are not based on contemporaneous records, but on his hindsight review of the case. Affidavits based only on an attorney's review of papers he prepared, or on his appointment or work calendar (which was written in anticipation of what the attorney *planned* on doing, as opposed to recording what he actually did), simply do not meet the strict standard set down in *Carey* and its progeny. "The rule in this Circuit prohibits the submission of reconstructed records, where no contemporaneous records have been kept." *Lenihan v. City of New York*, 640 F.Supp. 822, 824 (S.D.N.Y.1986) (emphasis omitted). *See also Dabney v. Regan*, No. 82 Civ. 2231, 1990 WL 3195, 1990 U.S.Dist. LEXIS 115 (S.D.N.Y. Jan. 9, 1990) (denying fee application where attorney's four-page typed tabulation of legal services rendered on various dates was not supported by contemporaneous time records).

Because Cohen did not keep contemporaneous records from the time this case was transferred to the Second Circuit until December 2, 1994, no fees will be awarded for the time claimed during that period. Although this result might seem harsh, it is consistent with the Court of Appeals' very clear and strict requirement that "*no* attorneys' fees c[an] be collected" if the application does not meet the standard set forth in *Carey*. *Lewis*, 801 F.2d at 577.

Once the case was transferred to a district within the Second Circuit, it was incumbent upon plaintiff's attorney to learn and follow the requirements of this circuit if he anticipated making a fee application.

For the third period of time, from December 2, 1994 to the present, plaintiff's counsel has kept contemporaneous time records. The time spent during this period, however, all relates to the fee application.

█ The Second Circuit has stated that "denial of fees for time spent preparing the fee application is always an appropriate and necessary penalty for omitting to include the time records" with the original application. *Lewis*, 801 F.2d at 577. Because plaintiff's counsel has not supplied contemporaneous records for the original motion, the 12.7 hours claimed during this third period will not be compensated.

## IV. Appropriate Rate of Compensation

█ Defendants contend that because plaintiff's attorney is a salaried employee of a union legal services fund, his fees should be limited to actual costs, that is, his salary plus reasonable expenses. Plaintiff maintains that he is entitled to be compensated at a reasonable market rate for attorneys in his attorney's geographical area.

Defendants base their argument primarily on *Devine v. National Treasury Employees Union*, 805 F.2d 384 (Fed.Cir.1986), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), in which the court held that fee awards to unions should be limited to the union's actual costs of litigation rather than to prevailing market rates. The court's rationale was that to award the union anything in excess of its actual costs would be unethical. Since the fees would go to the union rather than to the attorney, the union would get a windfall by receiving more than the litigation had actually cost the union. To allow the union thus to profit, the court held, would violate the maxim contained in Disciplinary Rule ("DR") 2–103(D)(4)(a) of the ABA Code of Professional Responsibility that prepaid legal services plans must be so "organized and operated that no profit is derived by it from the rendition of legal services by lawyers," as well as DRs 3–102 and 3–101(A) that attorneys may not split fees with laymen or lay organizations, or enable them to engage in the unauthorized practice of law. *Devine*, 805 F.2d at 387.

The court in *Devine* also held that this rule holds true even if the union has a separate legal fund, and all litigation funds come from that fund. The court stated that in that situation, "ethical problems would nonetheless exist because such a plan 'would relieve the union *pro tanto* from the burden of financing its litigation activities by allocating funds from general revenues [and would allow] it to profit indirectly from what it could not do directly.'" *Id.* at 388 (quoting *Wells v. Schweiker*, 12 MSPB 329, 332, 14 M.S.P.R. 175 (1982)).

In addition to the *Wells* case, the court in *Devine* cited with approval several other cases decided by the Merit Systems Protection Board ("MSPB"), which also limits fees for union-salaried attorneys to actual costs. *See Allen v. Department of Treasury*, 20 M.S.P.R. 518 (1984); *Powell v. Department of Treasury*, 8 MSPB 21, 8 M.S.P.R. 322 (1984); *O'Donnell v. Department of Interior*, 2 MSPB 604, 611 n. 10, 2 M.S.P.R. 445 (1980). The MSPB is under the exclusive jurisdiction of the Federal Circuit. 5 U.S.C. § 7703.

In opposition to defendants' argument, plaintiff relies on cases from the Ninth and District of Columbia Circuits which have held that awards to a union's legal services fund should be based on prevailing market rates. In *Curran v. Department of Treasury*, 805 F.2d 1406, 1408 (9th Cir.1986), the court rejected the rule adopted by the Federal Circuit and the MSPB, holding that "a separate operating account for legal services provides sufficient protection against the unauthorized practice of law by a lay organization." The court stated that it did not see how an indirect benefit accruing to a union from an award of market rate fees to its separate litigation fund would encourage the unauthorized practice of law, since the union "would still necessarily rely on attorneys to conduct the litigation." *Id.* at 1409. The court also observed that an above-cost fee award will not always provide an indirect economic benefit to the non-legal activities of a lay organization, since the organization might choose to maintain its contribution to the fund at the same level, and simply add the fee award to the fund's account as a means of financing greater legal activity. *Id.* at 1409 n. 2.

The District of Columbia Circuit agreed with *Curran* in *AFGE Local 3882 v. FLRA*, 944 F.2d 922, 935 (D.C.Cir.1991), in which the court held that fees awarded to an organization that provides both legal and non-legal services should be limited to actual costs "unless there is some guarantee that the amount above the organization's actual cost will ultimately be spent in the provision of legal assistance—as, for example, by placement into a fund maintained exclusively for legal representation." In addition to

adopting the rationale of *Curran*, the court also noted that any fee award, whether cost- or market-based, confers a benefit, and that in either situation, "[t]he size of the benefit varies, of course, but its character not one whit, and it defies logic to say that in the one instance the benefit is ethically permissible but in the other it is not." *Id.* at 936.

The court also noted that both the Federal Circuit and the MSPB had relied in part on the District of Columbia Circuit's prior decision in *NTEU v. Department of Treasury*, 656 F.2d 848 (1981), which held that a market-rate award was not appropriate where it appeared that the award would go directly into a union's coffers. In *AFGE*, however, the court stated that both the Federal Circuit and the MSPB had misread *NTEU* "as an unqualified declaration that unions can never recoup more than their costs." 944 F.2d at 937. The court pointed out that *NTEU* itself had suggested that market-rate fee awards to unions might be allowable "when the monies are directed into a fund for maintenance of a legal services program …" *Id.* (quoting *NTEU*, 656 F.2d at 855).

The Third Circuit has also expressed its agreement with *Curran* and *AFGE*, stating that "segregating legal fees [*i.e.*, by awarding them to a separate legal fund] eliminates ethical barriers to a market rate calculation for attorney fee awards." *Kean v. Stone*, 966 F.2d 119, 123 (3d Cir.1992). The Federal Labor Relations Authority also applies market-based rates for union attorneys. *See United States Customs Service & National Treasury Employees Union*, 46 FLRA No. 98, 1992 WL 396128, 1992 FLRA LEXIS 499 (1992).

Both sides in the case at bar state that the Second Circuit has not ruled on this issue, and this court has not found any authority suggesting otherwise. After reviewing the case law, however, I find the reasoning of the Ninth and District of Columbia Circuits to be more persuasive. Moreover, the Federal Circuit's and MSPB's view appears to be based at least in part on a misinterpretation of the *NTEU* case. I will therefore award plaintiffs fees at prevailing market rates.

Aside from their contention that fees should be limited to actual costs, defendants

**132**

do not object to the claimed rate of $171.82 per hour for Cohen's time. I have reviewed the materials plaintiff has submitted in support of this rate, and find it to be reasonable. Therefore, the fee award shall be calculated as follows:

For time spent by Martin R. Cohen, Esq.: 80 hours at a rate of $171.82 per hour, totaling $13,745.60.

For time spent by Susan Cooney, Esq.: 34.38 hours at a rate of $90 per hour, totaling $3094.43. The total amount of attorney's fees, therefore, is $16,840.03.

Finally, plaintiff seeks reimbursement for $1200 in travel costs. Plaintiff has attached to his reply brief copies of tickets and other documentation to support this request. However, $600 of that amount was incurred in connection with Cohen's attendance at plaintiff's administrative hearing in 1990. I have previously stated why I do not believe that that time is compensable, and for the same reasons I will reduce this portion of the request by $600.

### CONCLUSION

Plaintiff's motion for attorney's fees and costs pursuant to the Back Pay Act, 5 U.S.C. § 5596(b), is granted in part. Plaintiff is awarded $16,840.03 in attorney's fees, and $600 in costs. The total amount, $17,440.03, is to be paid to plaintiff by defendants within thirty (30) days of the date of entry of this Order.

IT IS SO ORDERED.